UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CLOSEABILITY DATA SOLUTIONS, INC. | : | Case No.: |
| | : | |
| PLAINTIFF, | : | |
| | : | **AFFIDAVIT OF KEVIN RA** |
| VS. | : | |
| | : | |
| ALTISOURCE S.À R.L., et al | : | |
| | : | |
| DEFENDANTS. | : | |

I, Kevin Ra, being duly sworn, depose and state as follows:

1. I am over the age of eighteen (18), of sound mind and body, and am otherwise competent to testify to the matters set forth in this affidavit.

2. I am the Interim Chief Executive Officer of CloseAbility Data Solutions, Inc. ("CloseAbility") and have personal knowledge of the matters stated herein. The facts set forth in this affidavit are either within my personal knowledge or based on business records that were made at or near the time of the events described, by a person with knowledge of the events, kept in the regular course of CloseAbility's business, and it was a regular practice of CloseAbility to make such records. Accordingly, the Court should find that the statements herein qualify under the business records exception to the hearsay rule pursuant to Federal Rule of Evidence 803(6).

3. CloseAbility operates a digital platform for real estate professionals that includes a compliant integration with Equator's system via Gmail and the custom domain myeqmail.com.

4. In early July 17, 2024, we received written confirmation from Equator representatives that our system configuration and use were permitted and compliant with Equator's operational terms. (See, Complaint, Exhibit "A").

5. On or about April 16, 2025, CloseAbility received a letter from Altisource, falsely accusing us of trademark infringement and unauthorized system use. We are informed and believe this communication was sent to over 3,000 real estate agents nationwide. (See, Complaint Exhibit "B").

6. The statements made by Altisource in that letter are false. CloseAbility never represented an affiliation or partnership with Equator beyond the use case approved by Altisource's staff and, in fact, our website, www.closeability.io, displays a clear legal disclaimer on disavowing any actual or conceived endorsement from Altisource. (See, EXHIBIT "C", true and exact copies of the CloseAbility website).

7. As a result of Altisource's statements, CloseAbility has suffered immediate and substantial reputational harm, including the withdrawal or hesitance of multiple potential clients and serious concerns from current and/or prospective investors.

8. The reputational and commercial injury to CloseAbility is ongoing and irreparable. This harm cannot be adequately compensated by monetary damages alone, as it undermines the integrity and goodwill of our brand in the real estate technology sector.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Further affiant sayeth naught.

_____

Kevin Ra
Interim Chief Executive Officer
CloseAbility Data Solutions, Inc.

Sworn to and subscribed before me this 21st day of April, 2025.

_____
Wendy S. Rosett, Notary Public

# Exhibit "C"

